**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 13-08171 EAG |
| PEDRO LÓPEZ MUÑOZ, | CHAPTER 11 |
| DEBTOR. | FILED & ENTERED ON 1/15/2016 |

**OPINION AND ORDER**

United Surety & Indemnity Company ("USIC") moves the court to appoint a chapter 11 trustee under section 1104(a) of the Bankruptcy Code.[1] [Docket Nos. 103 & 156.] The debtor opposes. [Docket Nos. 127, 158 & 159.] The court held an evidentiary hearing on the matter on July 14 and 15, 2015. [Docket Nos. 262, 266 & 267.] For the reasons stated below, USIC's motion to appoint a chapter 11 trustee is denied.

**I. JURISDICTION**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

## II. PROCEDURAL BACKGROUND

On October 1, 2013, the debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. [Dkt. No. 1.] The debtor filed his schedules and statement of financial affairs along with the petition. [Id.] On November 1, 2013, the meeting of creditors was held and closed. [Dkt. No. 16.]

On April 15, 2014, the debtor filed his first disclosure statement and plan of reorganization. [Dkt. Nos. 77 & 78.] On July 17, 2014, USIC filed an objection to the disclosure statement and requested the appointment of a chapter 11 trustee in the case. [Dkt. No. 103.] On July 31, 2014, the debtor requested time to amend his disclosure statement and plan. [Dkt. No. 113.] On August 5, 2014, the United States trustee filed his position on the matter. [Dkt. No. 112.] The court continued the hearing on approval of the disclosure statement, which had been set for July 31, 2014, setting both matters for a hearing on November 7 and 10, 2014. [Dkt. Nos. 99 & 113.]

On August 29, 2014, the debtor filed an amended disclosure statement and amended plan as well as his opposition to USIC's request for the appointment of a chapter 11 trustee. [Dkt. Nos. 125, 126 & 127.] That same date, the debtor also filed amended schedules, an amended summary of schedules, and an amended statement of financial affairs. [Dkt. Nos. 128 & 129.]

On October 28, 2014, USIC filed a reply to the debtor's opposition to the appointment of a trustee. [Dkt. No. 156.] On October 31, 2014, the debtor submitted a supplemental memorandum of law. [Dkt. Nos. 158 & 159.] On October 31, 2014, the parties submitted a pretrial report. [Dkt. No. 160.] On November 4, 2014, the debtor filed a supplement to the

second disclosure statement. [Dkt. No. 165.] On November 4, 2014, the debtor and USIC filed a joint request to continue the hearing on the approval of disclosure statement and on the request for appointment of a chapter 11 trustee, and the court continued the hearing to January 30 and February 2, 2015. [Dkt. Nos. 166 & 167.]

On January 7, 2015, USIC filed an opposition to the debtor's supplemental memorandum of law at docket number 158. [Dkt. No. 181.] A hearing was held on January, 22, 2015 because of a discovery dispute between the parties, and the hearing on the approval of disclosure statement and on the request for appointment of chapter 11 trustee was rescheduled to April 24 and 27, 2015. [Dkt. Nos. 185-190 & 193.]

On March 13, 2015, USIC filed a motion for summary judgment on the request for appointment of a chapter 11 trustee. [Dkt. No. 217.] On March 17, 2015, the debtor filed his opposition. [Dkt. No. 219.] On March 18, 2015, the debtor submitted updated financial exhibits to the second disclosure statement. [Dkt. No. 222.] On April 16, 2015, the court entered an opinion and order denying USIC's motion for summary judgment. [Dkt. No. 231.] On April 17 and 20, 2015, USIC filed a motion for reconsideration on the order denying the motion for summary judgment and the debtor opposed [Dkt. Nos. 233 & 236.] On April 21, 2015, USIC requested the continuance of the hearing on the request for appointment of a chapter 11 trustee, which was granted by the court and the hearing was continued to July 14 and 15, 2015. [Dkt. Nos. 238 & 242.] On July 8, 2015, the court entered an opinion and order denying USIC's request for reconsideration of the denial of its motion for summary judgment. [Dkt. No. 254.]

The evidentiary hearing on USIC's request for appointment of the chapter 11 trustee was held on July 14 and 15, 2015. [Dkt. No. 262.] USIC only presented the debtor for its in case

in chief. [Id.] The debtor presented two witnesses, himself and CPA Doris Barroso, as an expert witness in accounting and as a certified financial forensic accountant. [Id.] Thereafter, USIC presented CPA Rafael López Villarini as a rebuttal expert witness to CPA Barroso. [Id.]

Following the evidentiary hearing, the parties submitted post-trial memoranda with proposed findings of facts and conclusions of law [Dkt. No. 273 & 281.] A hearing was held on October 15, 2015 on several post-trial motions filed by the parties. [Dkt. Nos. 275-76, 279, 280, 285-86, 290 & 305.]

### III. FINDINGS OF FACTS

The facts which follow were found by the court from the joint pre-trial report filed by the parties at docket number 160, the testimony of the witnesses at the evidentiary hearing held on July 14 and 15, 2015, and the documents entered into evidence at that hearing.

#### *a. Transfer of assets*

Over 30 years ago, the debtor and his now ex-spouse, Rosa Alvarez Agrait, created Western Petroleum Enterprises Inc., for the sale and distribution of petroleum products and derivates. [Dkt. No. 160, ¶ 1.] The debtor owns 50% of the shares of this corporation. [Id.] Western Petroleum obtained surety bonds from USIC to guarantee its obligations to its creditors. [Hrg. Tr., Dkt. No. 266 at p. 26, lines 1-6; USIC's proof of claim, Joint Exhibit XVIII, Dkt. No. 262-33 at pp. 8-18.] In order to obtain these bonds, Western Petroleum had to provide to USIC a general agreement of indemnity signed by the debtor. [Hrg. Tr., Dkt. No. 266 at p. 26, lines 7-10; Joint Exhibit XVIII, Dkt. No. 262-33 at pp. 8-11.] This general agreement of indemnity is the basis for USIC's proof of claim. [Joint Exhibit XVIII, Dkt. No. 262-33 at pp. 8-11.]

4

In 1999, the debtor created Hi Speed Gas Corp., a corporation originally dedicated to the operation of gas service stations. [Dkt. No. 160, ¶ 2.] The debtor owns 100% of the shares of Hi Speed. [Id.] Hi Speed owns a gas station located at Road Number 2 in Hormigueros, Puerto Rico ("Hi Speed's gas station.") [Id.] On April 8, 2013, the debtor, on behalf of Hi Speed, executed a 20-year lease with Puma Energy Caribe LLC for the operation of Hi Speed's gas station. [Dkt. No. 160, ¶ 7; Deed Number 4 of Lease with Puma, Joint Exhibit XI, Dkt. No. 262-22; Certified Translation, Dkt. No. 271-1.] The lease provides, initially, for a $32,000 monthly rental payment from Puma to Hi Speed. [Dkt. No. 160, ¶ 7; Joint Exhibit XI, Dkt. No. 262-22 at p. 5; Dkt. 271-1 at p. 5.] The lease also provides for an advance payment of $125,000 from Puma to Hi Speed. [Hrg. Tr. Dkt. No. 266 at p. 39, lines 15-19; Joint Exhibit XI, Dkt. No. 262-22 at p. 6; Dkt. 271-1 at p. 6.] The advance payment was to be repaid to Puma by means of a $500 per month reduction in rental payments. [Hrg. Tr., Dkt. No. 266 at p. 39, lines 20-23.] The debtor, on behalf of Hi Speed, negotiated the lease with Puma a month prior to its execution. [Dkt. No. 160, ¶ 8.]

On May 28, 2001, the debtor acquired in his personal capacity a gas station located at Balboa Ward, Mayagüez ("debtor's gas station"). [Dkt. No. 160, ¶ 3.] The debtor's gas station did business as "Speed Way Service Station" and "Citgo Mayagüez." [Id.] On April 8, 2013, the debtor executed a 20-year term lease with Puma for the operation of the debtor's gas station. [Dkt. No. 160, ¶ 7; Deed Number 5 of Lease with Puma, Joint Exhibit X, Dkt. No. 262-21; Certified Translation, Dkt. No. 271-2.] The lease provides, initially, for a $18,000 month rental payment from Puma to the debtor. [Dkt. No. 160, ¶ 7; Joint Exhibit X, Dkt. No. 262-21, p. 5; Certified Translation, Dkt. No. 271-2, p. 5.] The lease also provides for an advance payment of

5

$125,000 from Puma to the debtor.  [Hrg. Tr. Dkt. No. 266 at p. 40, lines 22-24; Joint Exhibit X, Dkt. No. 262-21 at pp. 5-6.; Dkt. 271-2 at pp. 5-6.] The advanced payment was to be repaid to Puma by means of a $500 a month reduction in rental payments.  [Hrg. Tr., Dkt. No. 266 at p. 51, lines 13-20.] The debtor negotiated this lease agreement a  month prior to the execution of this lease.  [Dkt. No. 160,  ¶ 8.]

In 2013, Western Petroleum was not able to pay its debts as they became due, which caused it to cease operations.  [Dkt. No. 160,  ¶ 4.]  The debtor and his ex-spouse provided personal guarantees in excess of ten million dollars to most creditors of Western Petroleum. [Dkt. No. 160, ¶ 5.]  Aggressive creditors commenced collection actions in state court against Western Petroleum and the debtor.  [Id.]  On May 17, 2013, one of those creditors, Banco Santander Puerto Rico, garnished $182,435.66 from the debtor's personal account in Oriental Bank, which included the $125,000.00 advance payment received by the debtor from Puma. [Dkt. No. 160, ¶ 10;  Hrg. Tr., Dkt. No. 266 at p. 158, lines 17-25; p. 159, lines 1-5, 24-25; p. 160, line 1; Debtor's statement of bank account, Joint Exhibit XII, Dkt No. 262-23.]

On April 1, 2013, the debtor's son, Pedro José López Álvarez, created a trust named La Familia Trust.  [Dkt. No. 160, ¶ 6; Deed of Constitution of Trust, Joint Exhibit VIII, Dkt. No. 262-19.] On April 11, 2013, the debtor sold his interest in the debtor's gas station to Hi Speed. [Dkt. No. 160, ¶ 9.] The debtor transferred his gas station to Hi Speed under the advice of legal counsel. [Hrg. Tr., Dkt. No. 266 at p.104, lines 22-25; p. 105, line 1.]  According to the sales deed, Hi Speed paid the debtor $5,000 for the gas station and assumed the payment of the mortgage over the gas station with Banco Popular de Puerto Rico.  [Dkt. No. 160, ¶ 9.]  On the same date, the debtor donated his shares in Hi Speed to La Familia Trust. [Id.]  On August 29,

2014, after the petition was filed in this case, the debtor executed a deed to transfer back the shares of Hi Speed from the trust to the debtor and the debtor's gas station from Hi Speed to the debtor. [Dkt. No. 160, ¶ 23; Deed of Rescission, Joint Exhibit XIII, Dkt. No. 262-24.]

### b. Facts related to pre-petition allegations of fraud

The general agreement of indemnity, which Western Petroleum provided to USIC to obtain the surety bonds, was signed by the debtor in 2008. [Joint Exhibit XVIII, Dkt. No. 262-33 at pp. 8-11.] Western Petroleum provided to USIC information about the debtor's financial condition, including a financial statement of the debtor as of December 31, 2010. [Hrg. Tr., Dkt. No. 266 at p. 26, lines 11-17; Financial Statement dated December 31, 2010, Joint Exhibit XV-A, Dkt. No. 262-26 at pp. 1-12; Certified Translation, Joint Exhibit XV-B, Dkt. No. 262-27 at pp. 1-12.]

The 2010 financial statement shows that Hi Speed paid approximately $2.2 million for its gas station. [Hrg. Tr., Dkt. No. 266 at p. 116, lines 1-7; Joint Exhibit XV-A, Dkt. No. 262-26 at p. 9; Joint Exhibit XV-B, Dkt. No. 262-27 at p. 9.] In the 2010 financial statement, the debtor's shares in Hi Speed were valued at $3,000,000. [Hrg. Tr., No. Dkt. No. 266 at p. 34, lines 13-15; p. 35, lines 7-10; Joint Exhibit XV-A, Dkt. No. 262-26 at p. 4; Joint Exhibit XV-B, Dkt. No. 262-27 at p.4.] But, as per note 3 of the 2010 financial statement, this valuation was based on a 2002 appraisal. [Joint Exhibit XV-A, Dkt. No. 262-26 at p. 9; Joint Exhibit XV-B, Dkt. No. 262-27 at p. 9.] The 2010 financial statement also shows that the debtor's gas station had been appraised at $1,400,000 in 2002. [Hrg. Tr., No. Dkt. No. 266 at p. 36, lines 7-9; Joint Exhibit XV-A, Dkt. No. 262-26 at p. 8; Joint Exhibit XV-B, Dkt. No. 262-27 at p. 8.]

The court gives little or no weight to the values of the Hi Speed shares and the debtor's gas station listed in the 2010 financial statement. The 2010 financial statement was not prepared by a certified public accountant and it was not even a compilation, which is the lowest rank of service a certified public accountant can provide to his clients. [Hrg. Tr., Dkt. No. 267 at p. 48, lines 14-25; p. 49, lines 1-9.] Further, the value of assets in 2002 is not necessarily representative of their value eight years later in 2010, and even less so in 2013 when the debtor's gas station was transferred to Hi Speed and the Hi Speed shares were transferred to La Familia Trust. [Hrg. Tr., Dkt. No. 267 at p. 49, lines 13-23.]

The deed of constitution of La Familia Trust states that its purpose is to "maintain adequate living standards" for the debtor and his children. [Joint Exhibit VIII, Dkt. No. 262-19 at p. 2.] But, the trust deed names the debtor as its only beneficiary. [Hrg. Tr., No. Dkt. No. 266 at p. 37, lines 1-3; Joint Exhibit VIII, Dkt. No. 262-19 at p. 3(b), p. 19(b).] And, it names the debtor's children as substitute beneficiaries. [Joint Exhibit VIII, Dkt. No. 262-19 at p. 3(b).] The trustee is the debtor's current spouse. [Hrg. Tr., Dkt. No. 266 at p. 37, lines 4-6; Joint Exhibit VIII, Dkt. No. 262-19 at p. 1, p. 17.] Although the debtor testified at the evidentiary hearing that La Familia Trust would exist only during his lifetime, the trust deed provides for a gradual phasing out of the trust after the debtor's demise. [Hrg. Tr., Dkt. No. 266 at p. 37, lines 16-18; Joint Exhibit VIII, Dkt. No. 262-19 at p. 4.]

Any property transferred as a donation by the debtor to La Familia Trust becomes property of the trust. [Hrg. Tr., Dkt. No. 266 at p. 37, lines 22-24; Joint Exhibit VIII, Dkt. No. 262-19 at pp. 4-5.] The trust deed grants the debtor the power to designate any successor trustee at any time. [Hrg. Tr. Dkt. No. 266 at p. 38, lines 1-3; Joint Exhibit VIII, Dkt. No. 262-19

at p. 13(g)).] The trustee must follow any instructions from the debtor as to distributions of income generated by the trust property and also of trust property itself. [Hrg. Tr., Dkt. No. 266 at p. 38, lines 4-8; Joint Exhibit VIII, Dkt. No. 262-19 at pp. 5-6.] No person other than the debtor can obligate the trustee to make distributions from the trust to any person, other than the debtor. [Hrg. Tr., Dkt. No. 266 at p. 38, lines 9-12; Joint Exhibit VIII, Dkt. No. 262-19 at p. 5.] The trust deed grants the debtor an exclusive right of use of all trust properties. [Hrg. Tr., Dkt. No. 266 at p.38, lines 13-16; Joint Exhibit VIII, Dkt. No. 262-19 at p. 6.]

Puma, in the lease agreements for the two gas stations, assumed and was responsible for all costs related to their operation, including water, electrical power, telephone, other utilities and insurance. [Hrg. Tr., Dkt. No. 266 at p. 41, lines 3-18.] Under both leases, neither employees of Puma nor of any retailer operating the gas stations are considered employees of Hi Speed or of the debtor. [Hrg. Tr., Dkt. No. 266 at p. 41, lines 10-14.] Puma was also responsible for the repair and maintenance of the two gas stations and for obtaining the licenses necessary for their operation. [Hrg. Tr., Dkt. No. 266 at p. 41, lines 19-25.] Puma also assumed the responsibility to pay real and personal property taxes. [Hrg. Tr., Dkt. No. 266 at p. 42, lines 1-3 and 23-25; p. 43, lines 1-7.] Thus, the rents received by Hi Speed and by the debtor under these leases were free and clear of any operating expenses. [Hrg. Tr., Dkt. No. 266 at p. 43, lines 8-13.]

The audited financial statement of Hi Speed for the period ending June 30, 2013 gave a book value for Hi Speed of negative $452,000. [Hrg. Tr., Dkt. No. 267 at p. 39, lines 17-24; p. 40, lines 1-2; Audited financial statement of Hi Speed for the period ending June 30, 2013, Debtor's Exhibit 2, Dkt. No. 262-2 at pp. 3-4; Certified Translation, Dkt. No. 264 at pp. 21-22.]

The 2013 audited financial statement of Hi Speed discloses the existence of the two Puma leases and of the two advanced payments of $125,000 each, paid by Puma upon the execution of the leases. [Hrg. Tr., Dkt. No. 267 at p. 40, lines 3-14; Dkt. No. 262-2 at p. 9; Dkt. No. 264 at p. 27.] The audited financial statement for the period ending December 31, 2012 of the debtor's gas station states that the operation had a book value book of negative $923,000. [Hrg. Tr., Dkt. No. 267 at p. 40, lines 3-14; Debtor's Exhibit 3, Dkt. No. 262-3, at pp. 3-4.]

### c. Facts related to post-petition allegations of fraud

The debtor filed the voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 1, 2013. [Dkt. No. 1.] Since the filing, the debtor receives from Hi Speed a monthly salary of $5,000 and rent of $10,000 for office space leased by Hi Speed from the debtor. [Dkt. No. 160, ¶ 12.] Hi Speed pays its own operating expenses for the administration of the lease of Hi Speed's gas station to Puma. [Hrg. Tr., Dkt. No. 266 at p. 70, lines 12-14.] After the reversal on August 29, 2014 of the asset transfers, the monthly rent Hi Speed pays the debtor was reduced to $5,000 because Hi Speed is now administering only one lease. [Hrg. Tr., Dkt. No. 267 at p. 97, lines 13-24.]

The debtor disclosed the pre-petition transfers to Hi Speed and then to the trust in the statement of financial affairs. [Dkt. No. 160, ¶ 14.] The debtor also disclosed his interest in Western Petroleum and in PR International Salt Corp., another corporation owned by the debtor and his former spouse, in his schedules. [Id.] On November 1, 2013, the meeting of creditors was held and closed. [Dkt. No. 16; Dkt. No. 160, ¶15.] During the meeting, the debtor answered numerous questions by the United States trustee about the pre-petition transfers. [Dkt. No. 160, ¶15.] USIC's attorney was present at the meeting of creditors. [Dkt. No. 160, ¶

16.] At the status conference held on December 19, 2013, the debtor's counsel informed that the debtor "receives rental income from two real estate properties that are being leased." [Audio File of Status Conference, Dkt. No. 35, at approximately 3 minutes and 55 seconds.] On April 28, 2014, USIC deposed the debtor and the debtor also produced documents to USIC, "except a document sustaining the transfer of shares to the Trust." [Dkt. No. 160, ¶ 19.]

Although the statement of financial affairs filed along with the petition states that the assets were transferred to La Familia Trust in March 2013, the correct date was April 11, 2013. [Hrg. Tr. Dkt. No. 266 at p. 45, lines 4-10; p. 50, lines 11-14; Schedules and Statement of Financial Affairs filed on October 1, 2013, Joint Exhibit II, Dkt. No. 262- 7 at p. 30.] The debtor testified that the incorrect date was due to an honest mistake. [Hrg. Tr. Dkt. No. 266 at p. 50, lines 7-14.]

At the meeting of creditors, the debtor testified that his four adult children were the beneficiaries of La Familia Trust. [Hrg. Tr., Dkt. No. 266 at p. 37, lines 10-13.] But, at the evidentiary hearing, he admitted that he was the sole beneficiary of the trust. [Hrg. Tr., Dkt. No. 266 at p. 37, lines 14-15.] The debtor explained that at the meeting of creditors, he spoke from memory, he did not have the trust deed with him, and thought of his children as the trust beneficiaries because the "law of life" dictates that he will pass away before his children do. [Hrg. Tr., Dkt. No. 266 at p. 71, lines 19-25; p. 72, lines 1-8.]

The debtor also testified at the meeting of creditors that Hi Speed was still operating Hi Speed's gas station. [Hrg. Tr., Dkt. No. 266 at p. 52, lines 9-12.] The debtor also testified that the shares of Hi Speed that he transferred to the trust were worthless and that the reason he transferred them was to protect his children. [Transcript of meeting of creditors, Joint Exhibit

IV, Dkt. 262-9 at p. 21, lines 23-24; p. 22, lines 1-8; p. 72, lines 14-22; p. 75, lines 23-24; p. 76, lines 1-3; p. 77, lines 12-22.]   The statement of financial affairs discloses that the shares of Hi Speed transferred to the trust had "no value."  [Joint Exhibit II, Dkt. No. 262-7 at p. 30.]  The debtor relied on an amended financial statement for the year 2010 in order to provide the value of the shares of Hi Speed in the statement of financial affairs and at the meeting of creditors. [Hrg. Tr., Dkt. No. 266 at p. 104, lines 9-18; Amended Statement of the debtor's financial condition as of December 31, 2010 dated July 31, 2013, Debtor's Exhibit 5, Dkt No. 262-4 .]

The operating expenses included in Schedule J are the debtor's own expenses related to the administration of the Puma lease for the debtor's gas station and not those of operating the gas station. [Hrg. Tr., Dkt. No. 266 at p. 70, lines 1-11.]  The debtor charges to Hi Speed on a monthly basis, as cost of administering leases, charges for electric power, water, and telephone for 1,000 square feet of office space rented by the debtor to Hi Speed. [Hrg. Tr., Dkt. No. 266 at p. 70, lines 12-14; p. 137, lines 15-19.]  The debtor also collects from Hi Speed property taxes (CRIM), "patentes" (licenses), and repair and maintenance for this office space. [Hrg. Tr., Dkt. No. 266 at p. 137, line 23; p. 138, lines 1-19.]  The debtor also charges Hi Speed for services provided to it by an accountant that also works for the debtor and Puerto Rico International Salt Corporation. [Hrg. Tr., Dkt. No. 266 at p. 136, lines 22-25; p. 137, lines 1-14.]

The disclosure statement filed on April 15, 2014 represents that the debtor sold his gas station to Hi Speed to preserve the property because of difficulties in making mortgage payments. [Hrg. Tr., Dkt. No. 266 at p. 50, lines 15-20; Debtor's first disclosure statement, Joint

Exhibit V, Dkt. No. 262-10 at p. 6.] This April 2014 disclosure statement did not disclose the two Puma leases. [Joint Exhibit V, Dkt. No. 262-10 at p. 21.]

On August 29, 2014, the debtor amended his disclosure statement, schedules and statement of financial affairs to disclose the reversal of the asset transfers. [Hrg. Tr. Dkt. No. 266 at p. 67, lines 8-25, p. 68, lines 1-21; Joint Exhibits VI-VII, Dkt. No. 262.] The amended schedules now include the debtor's gas station, the shares of Hi Speed, the Puma lease for the debtor's gas station, the income received from the Puma lease, and the operating expenses associated with the administration of that lease. [Hrg. Tr. Dkt. No. 266 at p. 67, lines 8-25, p. 68, lines 1-25; p. 69, lines 1-8; Joint Exhibit VI, Dkt. No. 262-12 to Dkt. No. 262-18.] The amended disclosure statement and amended Schedule B give a zero value to the shares of Hi Speed and to the Puma lease of the debtor's gas station. [Hrg. Tr. Dkt. No. 266 at p. 142, lines 8-21; Joint Exhibit VI, Dkt. No. 262-XX at p. 9; Joint Exhibit VII, Dkt No. 262--12 to Dkt. No. 262-18 .] The audited financial statements for Hi-Speed as of June 30, 2013, and for the debtor's gas station as of December 31, 2012 were included in the amended disclosure statement. [Hrg. Tr., Dkt. No. 267 at p. 46, lines 1-3; Joint Exhibit VII, Dkt. No. 262-15 at pp. 94-119.]

After the rescission on August 29, 2014 of the transfer of the debtor's gas station, the debtor himself commenced making all payments to Banco Popular for the mortgage over the property and covered the operating expenses of administering the lease which were previously covered by Hi Speed. [Hrg. Tr., Dkt. No. 266 at p. 162, lines 15-21.] After the assets were transferred back, Hi Speed did not return to the estate any money received from Puma prior to August 29, 2014. [Hrg. Tr., Dkt. No. 266 at p. 147, lines 2425; p. 148, lines 1-13; Joint Exhibit XVI, Dkt. No. 262-12 at pp. 1-33.]

13

The liquidation analysis prepared by CPA Barroso included in the amended disclosure statement includes the value of the real estate property separate from the value of the lease of the debtor's gas station and it also includes the value of the shares of Hi-Speed. [Hrg. Tr., Dkt. No. 267 at p. 54, lines 10-13; Joint Exhibit VII, p. 105-110.]  The value of the lease of the debtor's gas station and the shares of Hi Speed, were calculated performing a cash flow of those operations for which CPA Barrroso used the current income and expenses of both the debtor's and Hi Speed's gas stations. [Hrg. Tr., Dkt. No. 267 at p. 52, lines 15-25; p. 53, lines 1-8 and 23-25, p. 54, lines 20-25, p. 55, lines 20-25; Joint Exhibit VII, Dkt. No. 262-18 ,pp. 18-23.] CPA Barroso analyzed the combined cash flow, as well as separate cash flows of the operations of debtor's and Hi Speed's gas stations for the period from  April 2013 to October 2014.  [Hrg. Tr., Dkt. No. 267 at p. 55, lines 20-25; p. 56, lines 9-16.] The combined ending cash flow was negative because the individual disbursements exceeded the receipts for this period. [Hrg. Tr., Dkt. No. 267 at p. 56, lines 17-25, p. 57, line 1.]

After the transfers were reversed, there was no surplus owed by Hi Speed to the estate for the period Hi Speed operated the debtor's gas station since Hi Speed paid the debtor's mortgage to Banco Popular, assumed the operating expenses of the lease, and paid the salary and rent to the debtor.  [Hrg. Tr., Dkt. No. 267 at p. 57, lines 2-19.] CPA Barroso found no indicia of fraud given that there had been no diversion of funds, no concealment or omission of assets or information, and no falsification of documents. [Hrg. Tr., Dkt. No. 267 at p. 58, lines 3-16.]  CPA Barroso did not prepare a fraud analysis, because, again, she found no indicia of fraud. [Hrg. Tr., Dkt. No. 267 at p. 92, lines 23-25, p. 93, lines 1-10.] Finally, CPA Barroso concluded that there was no material effect from the transfers made upon the estate because

14

all funds were received by the estate and the from the estate to the secured creditors. [Hrg. Tr., Dkt. No. 267 at p. 59, lines 14-20.]

USIC hired CPA Rafael Pérez Villarini to perform valuations of the lease agreement with Puma for the debtor's gas station and the shares of Hi Speed. [Hrg. Tr., Dkt. No. 267 at p. 117, lines 22-24.] But, when asked regarding his position as to the conclusion of CPA Barroso that there was no monetary loss to the estate as a result of the transfer of assets made by the debtor, CPA Pérez Villarini testified that he had no basis to reach a conclusion as to Barroso's conclusion. [Hrg. Tr., Dkt. No. 267 at p. 137, lines 15-23.]

## V. APPLICABLE LAW AND DISCUSSION

Section 1104(a) provides that on request of a party of interest or the United States Trustee "[a]t any time after the commencement of the case but before confirmation of a plan," the court shall order the appointment of a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management" or "if such appointment is in the interests of creditors." 11 U.S.C. § 1104(a). "The appointment of a trustee is an extraordinary remedy and should be analyzed on a case by case basis to determine whether 'cause' exists." In re Costa Bonita Beach Resort, 479 B.R. 14, 44 (Bankr. D.P.R. 2012). The appointed trustee takes over, displacing and divesting the debtor of all control of and possession of property of the estate. In re Waterworks, Inc., 538 B.R. 445, 465 (Bankr. N.D. Ill. 2015). There is a strong presumption that a debtor should be permitted to remain in control and possession of its business. 7 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶1104.02[3(b)(i)] (16th ed. 2014).

USIC bears the burden of proving that cause exists for the appointment, but section 1104 does not establish what standard of proof a movant must meet to show cause.  USIC urges the court to apply a preponderance-of-evidence standard, while the debtor asserts that the applicable standard is clear and convincing evidence.  Courts are split on what standard to apply, but the majority have held that the movant must demonstrate cause by clear and convincing evidence. 7 Collier on Bankruptcy, at ¶1104.02[4(b)]; In re Bayou Group, LLC, 564 F.3d 541, 546 (2d Cir. 2009); In re G-I Holdings, Inc., 385 F.3d 313, 317-18 (3d Cir. 2004) (explaining that heavy "presumption" against appointment of outside trustee refers to heavy burden of persuasion by clear and convincing evidence that party moving for appointment must bear.)  This court agrees with the majority view that a debtor's presumptive right to maintain possession over the reorganizing business is an important interest justifying the heightened burden of clear and convincing evidence. At any rate, the debate is immaterial here because the court finds that the appointment of a trustee in this case is not warranted under either standard.

USIC argues that the debtor engaged in fraud upon creditors, made false statements, mismanaged the estate, and was dishonest in omitting several crucial disclosures that he supplied only after USIC raised the issue.  Among the specifics, USIC argues that the appointment of a chapter 11 trustee is warranted because: (i) the debtor's donation of his Hi Speed shares to La Familia trust is presumed to be fraudulent under the Puerto Rico Civil Code; (ii) following the rescission of the transfer, the debtor's estate now has a cause of action against Hi Speed for the turnover of estate property in the amount of $119,500, plus interest; (iii) the transfers of assets disclosed by the debtor in his statement of financial affairs were done in

April 2013, and not March 2013 as stated; (iv) the debtor falsely stated in his first disclosure statement that the reason that he transferred the debtor's gas station to Hi Speed was because he could not pay the mortgage with Banco Popular; (v) the debtor falsely stated at the meeting of creditors that the beneficiaries of the La Familia Trust were his children and not him; (vi) the debtor falsely stated that his Hi Speed shares were worthless at the meeting of creditors and in the statement of financial affairs; and (vii) the leases with Puma for the gas stations were not disclosed in the first disclosure statement. [Dkt. No. 281 at. pp. 13-16, 18, 25-26 & 33.]

The Unites States trustee takes the position that conversion to chapter 7–not the appointment of a chapter 11 trustee–may be the appropriate course of action in this case, but has not moved the court for either. [Docket No. 112.]

The debtor opposes the appointment of a chapter 11 trustee and argues that he always acted with honesty, neither hid any information nor diverted any asset in detriment to the estate, showed that his actions were to protect the rents from the leases and the properties that produced that rental income, and that all rental income received from leases is traceable and was used to pay the secured creditor whose collateral generate that income and maintain the debtor's business operations. [Dkt. No. 273 at p. 25.] The debtor further argues that he sought to protect his assets from the aggressive collection actions of just one unsecured creditor. [Dkt. No. 273 at p. 24.] See, In re Brenda's Rentals, L.L.C., 2014 Bankr. LEXIS 1918 at *12-13 (Bankr. N.D. Ala. 2014) (where the court denied the appointment of a chapter 11 trustee under 1104(a)(1) finding that "trying to survive while having all your rental income seized is not incompetence or gross mismanagement," and that the debtors "were just trying to stay afloat and that there was no underhandedness.").

17

Article 1249 of the Puerto Rico Civil Code creates a presumption that the asset transfer was done in fraud of creditors. P.R. Laws Ann. tit. 31, § 3498. But, the debtor rebutted that presumption at the evidentiary hearing with the testimony of CPA Barroso that the transfer of assets had "no material effect" upon the estate. CPA Barroso was a credible and convincing witness and was qualified to testify as an expert in accounting and, in particular, as a certified financial forensic accountant. Her duties in this case included the review of the monthly operating reports, assistance in the preparation of the payment plan, reconciliation of claims submitted to the court with the accounting records, preparation of the liquidation analysis, assistance in the preparation of the financial projections, and analysis of information regarding the cash inflows and outflows of the debtor and Hi Speed. [Hrg. Tr., Dkt. No. 267 at p. 28, lines 14-24; p. 29, lines 18-25.] The Court also took into account its observations over many years in other cases in which CPA Barroso has been employed as a bankruptcy professional in according considerable weight to her testimony. And, when USIC called CPA Pérez Villarini as an expert witness to rebut CPA Barroso's testimony and asked him whether he agreed with her statement that there was no "monetary loss to the estate as a result of both the transfers that Mr. Lopez performed in regarding the shares of Hi Speed and la familia trust," CPA Pérez Villarini answered "I can't - - I can't," and added "I have no basis to - - to reach a conclusion in that." [Hrg. Tr., Dkt. No. 267 at p. 137, lines 15-23.]

USIC also argues that the debtor's estate has a cause of action for the turnover of $119,500, plus interest, against Hi Speed due to the rescission of the asset transfers. [Dkt. No. 281 at pp. 25-26.] But, CPA Barroso's testimony that the asset transfers had no material effect

upon the estate remains in the court's view uncontested.  Thus, USIC did not meet its burden of proof that such cause of action exists.

The court is, likewise, not persuaded by the several other grounds raised by USIC.  They either were not material to the section 1104 analysis or do not rise to the level of misconduct requiring the appointment of a chapter 11 trustee.  And, in many instances, the debtor was able to provide an acceptable explanation for his actions.  For example, the debtor was able to show that he relied on an amended financial statement for the year 2010 when he indicated that the Hi Speed shares had no value.

**VI. CONCLUSION**

Having concluded that USIC did not meet its burden of proof, the court denies its request for appointment of a chapter 11 trustee [at Dkt. Nos. 103 & 156].  The clerk is to enter a separate order scheduling a hearing on the approval of debtor's second disclosure statement [at Dkt. Nos. 125 & 165.]

SO ORDERED.

In Ponce, Puerto Rico, this 15th day of January 2016.

Edward A. Godoy
U.S. Bankruptcy Judge

19